**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

VINCENT BARROW,

                       Plaintiff,

            v.                                    No. 12-CV-1268
                                               (MAD/CFH)
DR. LAWRENCE FARAGO,

                       Defendant.

---

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                       **OF COUNSEL:**

Vincent Barrow
98-A-3967
Plaintiff Pro Se
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. ERIC T. SCHNEIDERMAN         DENISE P. BUCKLEY, ESQ.
Attorney General for the                  Assistant Attorney General
   State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Vincent Barrow, an inmate who was, at all relevant times, in the custody of the New York State Department of Corrections and Community Supervision

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

("DOCCS"), and a patient in the Residential Mental Health Unit ("RMHU") of Marcy Correctional Facility ("Marcy"), brings this action pursuant to 42 U.S.C. § 1983 against numerous defendants alleging violations of his rights under the First, Eighth, and Fourteenth Amendments of the U.S. Constitution, as well as Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794. Dkt. No. 1. Plaintiff commenced this action on August 13, 2012, seeking an injunction and $400,000 in punitive damages on all causes of action. Id.

On February 7, 2013, plaintiff filed an amended complaint. Dkt. No. 12. On April 1, 2014, plaintiff filed a second amended complaint against defendants Karen Bellamy, Joseph Bellnier, Maureen A. Boll, Maureen Bossco, Lieutenant Cory, Anthony Devitto, Dr. Farago, Brian Fischer, Captain Harper, Bryan Hilton, Michael Hoagan, Holanchuck, Lisa Kalies, Charles Kelly, Jr., Lucien Leclair, Bob Lewis, E. Lindquist, B. McArdle, Jeff McKoy, Kenneth S. Pearlman, Donald Selskey, and Diane VanBuren, alleging violations of his rights under the First, Eighth, and Fourteenth Amendments of the U.S. Constitution, as well as the ADA and RA. Dkt. No. 50.

On January 30, 2015, the Court granted defendants' motion to dismiss as to all of plaintiff's claims except plaintiff's Eighth Amendment deliberate indifference claim against defendant Dr. Farago. Dkt. No. 70. Presently pending is Dr. Farago's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(a). Dkt. No. 87. For the following reasons it is recommended that defendant's motion for summary judgment be granted.

**I. Background**

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See subsection II(A) infra.

### A. Plaintiff's Complaint

Plaintiff states that he arrived at RMHU with a diagnosis of Major Depressive Disorder and Antisocial Disorder. Dkt. No. 50 ¶ 46. Plaintiff alleges that Dr. Farago changed his diagnosis to that of Poly-Substance Abuse, which plaintiff believes is a "fictitious diagnosis." Id. Plaintiff further alleges that Dr. Farago stopped his depression medication, which plaintiff has been taking for over fifteen years. Id. ¶ 47. Plaintiff has been "complaining and begging for meds," and Dr. Farago has denied him therapy and only "pretended" to treat plaintiff's depression cell-side. Id. ¶ 48. Lastly, Dr. Farago has made "comical faces" at plaintiff, facing away from the security camera, while plaintiff "begged" for depression medication. Id. ¶ 52.

### B. Plaintiff's Medical History at Marcy RMHU

Plaintiff has a history of attempting suicide and has been put on suicide watch several times. In 1996, plaintiff attempted suicide for the first time. Buckley Decl. Exh. B (Dkt. No. 87-5) at 33:2-7.[2] In 2005, plaintiff attempted suicide again. Id. at 34:8-10. The next attempted suicide was in 2009. Id. at 34:18-22. The last attempted suicide was in "either the end of 2012 or the beginning of 2013." Id. at 36:17-24.

---

[2] Docket number 87-5 is the transcript of plaintiff's deposition taken on August 26, 2015. The Court refers to the page number generated by CM/ECF at the top right corner of each page, and line numbers from the transcript.

From April 2010 through October 2012, and at all times relevant to plaintiff's Second Amended Complaint, Dr. Farago was plaintiff's treating psychiatrist at Marcy RMHU. Buckley Decl. Exh. B at 46:7-10.

On February 16, 2010, prior to Dr. Farago's care of plaintiff, plaintiff's Outpatient Treatment Plan listed plaintiff's mental diagnoses as Polysubstance Dependence and Anti-social Personality Disorder ("ASPD") with borderline and narcissistic traits. Declaration of Dr. Lawrence Farago (Farago Decl.) ¶ 15.[3] Plaintiff signed the February 16, 2010 Outpatient Treatment Plan on February 17, 2010. Id. Plaintiff's diagnoses remained the same when he signed a later Outpatient Treatment Plan on May 14, 2010. Id. ¶ 16.

Plaintiff's principal diagnosis of ASPD with borderline narcissistic traits did not change during the time that Dr. Farago treated plaintiff, and was noted in plaintiff's diagnosis record as the principal psychiatric diagnosis. Farago Decl. ¶ 17. Plaintiff had secondary diagnoses of polysubstance dependence and dysthymic disorder, which Dr. Farago noted is a mood disorder that is not the same as major depressive disorder or clinical depression. Id. ¶ 18.

Plaintiff was prescribed psychotropic medications, Remeron and Effexor XR, renewed every three months, from March 8, 2010 through June 3, 2011. Farago Decl. ¶¶ 24-25. During the period of January 3, 2011 through April 4, 2011, plaintiff was partially compliant with his prescribed psychotropic medications, often refusing medications without providing any reason. Id. ¶¶ 26-27. From March 29, 2011 through April 4, 2011, plaintiff refused his psychotropic medications six times. Id. ¶ 27.

---

[3] Most statements contained in Dr. Farago's declaration are supported by plaintiff's mental health medical record, which was submitted as Exhibit A to the Declaration of Denise P. Buckley. Dkt. No. 88. Because of the confidential nature of plaintiff's mental health record, the Court will refrain from citing to it, but notes that the pertinent portions of plaintiff's mental health record have been reviewed in conjunction with Dr. Farago's declaration submitted in support of the instant motion.

On April 5, 2011, plaintiff refused to come out of his cell for a psychiatric visit and refused to speak to Dr. Farago. Farago Decl. ¶ 30. That same day, Dr. Farago discontinued plaintiff's current Effexor XR prescription dosage, and prescribed a slightly increased dosage "for lewd exposing related to behavior," along with Remeron. Id. ¶ 31. These prescription orders were effective from April 5, 2011 through July 5, 2011. Id. On April 25, 2011, plaintiff's prescription for Effexor XR was discontinued due to plaintiff's refusal to take it. Id. ¶ 32. Plaintiff's prescription for Remeron was extended through October 6, 2011. Id. Plaintiff's primary therapist opined that plaintiff was "free of depressive symptoms" on August 5, 2011. Id. ¶ 34.

On September 15, 2011, plaintiff's prescription for Remeron was lowered for five days, from September 15, 2011 through September 19, 2011. Farago Decl. ¶ 37. The dosage was tapered to discontinue Remeron completely by the fifth day, September 19, 2011. Id. A progress note authored by Dr. Farago on September 15, 2011 indicated that "[t]here has been no evidence of depression since I have known [plaintiff] and no indication for the Remeron either. Will [discharge] per plan. No clinical need for re-assessment—staff indicate no [change] in behavior since my last clinical assessment." Id. ¶ 36. Plaintiff refused to be seen by Dr. Farago on this date, and again on December 1, 2011. Id. ¶¶ 36, 38. Dr. Farago noted on December 1, 2011 that plaintiff requested medication, but there was no clinical indication that he needed medication for depression. Id. ¶ 38.

On May 29, 2012, plaintiff told Dr. Farago that he was depressed, but Dr. Farago did not observe any signs or symptoms of depression or other psychological distress.

Farago Decl. ¶ 42. Dr. Farago stated that "[p]laintiff related well, was calm, had normal speech, was not agitated, had excellent grooming and hygiene with meticulous facial hair grooming, and had logical and goal directed thought." Id. (internal quotation marks omitted). Further, "[p]laintiff's affect was full range and stable; however, plaintiff's mood was incongruent with his verbalization that he was depressed." Id. (internal quotation marks omitted). The need for medication was not indicated. Id.

On October 31, 2012, plaintiff saw a different psychiatrist, Dr. Siddiqi, who agreed with plaintiff's primary diagnosis of ASPD, and secondary diagnosis of poly-substance abuse. Farago Decl. ¶ 45. Dr. Siddiqi did not prescribe any medications, as he observed that plaintiff was "doing well" without medications. Id.

## II.  Discussion[4]

Plaintiff contends that his Eighth Amendment rights were violated when Dr. Farago acted with deliberate indifference to his serious medical need in treating plaintiff's mental ailments. See Dkt. No. 50 ¶¶ 46-52. Dr. Farago argues that plaintiff has failed to establish an Eighth Amendment deliberate indifference claim against him. Dkt. No. 87-3 at 4-14.

### A.  Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions,

---

[4] All unpublished opinions cited to by the Court in this Report-Recommendation and Order are, unless otherwise noted, attached to this Report-Recommendation and Order.

answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "In determining whether summary judgment is appropriate, [the Court] will resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Carey, 923 F.2d at 19. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. Partnership, 22 F.3d, 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest

> arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

### B. Eighth Amendment

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes, which includes punishments that 'involve the unnecessary and wanton infliction of pain.'" U.S. Const. amend. VIII; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). The Eighth Amendment obligates prison officials to provide necessary medical care to prisoners. Id. Thus, "a prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (quoting Helling v. McKinney, 509 U.S. 25 (1993)) (additional citations omitted).

To state a cognizable 1983 claim against prison officials for deliberate indifference to serious medical needs, the prisoner must first show that he had "in objective terms, [a] sufficiently serious" medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Hathaway, 37 F.3d 66). Second, the prisoner must show that the state actor demonstrated deliberate indifference by having knowledge of the risk of harm and failing to take measures to avoid the harm. Id. at 702 (quoting Farmer, 511 U.S. 837).

A serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance, 143 F.3d 702). The severity of the medical need and the denial of care must be judged within the context of the specific facts and circumstances surrounding the case. Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003).

"An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Chance, 143 F.3d 702 (quoting Farmer, 511 U.S. 837). Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. 104-05. Further, "mere disagreement over the proper treatment does not create a constitutional claim." Chance, 143 F.3d at 703. Thus, "so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703; Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).

### 1. Serious Medical Need

Plaintiff alleges that he suffers from Major Depressive Disorder and Anti-Social Disorder. Dkt. No. 50 ¶ 46. Dr. Farago alleges that plaintiff's condition does not constitute a serious medical need which "might produce death, degeneration, or extreme pain." Dkt. No. 87-3 at 5-6.

Although Major Depressive Disorder has been held to establish a serious medical need, Dabney v. Sawyer, No. 9:11-CV-0273 (LEK/RFT), 2013 WL 5494074, at *8 (N.D.N.Y. Sept. 30, 2013), plaintiff has failed to establish that he actually suffered from major depressive disorder. Prior to Dr. Farago's care of plaintiff, plaintiff's Outpatient Treatment Plan listed his mental health diagnoses as "Polysubstance Dependence and Antisocial Personality Disorder ("ASPD") with borderline and narcissitic traits." Farago Decl. ¶ 15. Plaintiff's principal diagnosis of ASPD with borderline narcissistic traits did not change during Dr. Farago's time spent caring for plaintiff. Id. ¶ 17. Further, plaintiff consistently had secondary diagnoses of polysubstance dependence and dysthymic disorder, which Dr. Farago notes is a mood disorder that is not the same as major depressive disorder or clinical depression. Id. ¶ 18. Further, on October 31, 2012, plaintiff saw a different psychiatrist, Dr. Siddiqi, who concurred with the primary diagnosis of ASPD, with a secondary diagnosis of polysubstance abuse. Id. ¶ 45. Although plaintiff disagrees with Dr. Farago's medical decisions and states that he is depressed, he has not exhibited any signs or symptoms of depression or psychological distress of any kind. Id. ¶ 42. Furthermore, plaintiff's extensive medical record does not include depression, and both Dr. Farago and Dr. Siddiqi's professional opinions have concluded that plaintiff's alleged depression is not clinically indicated. Id. ¶¶ 45, 54.

Dr. Farago noted how plaintiff exhibited signs that could be argued against a diagnosis of major depression, such as his interest in complex, philosophical novels, his "immaculate cell," grooming, and "impressive" physical fitness. Farago Decl. ¶¶ 51–53. Dr. Farago noted how people suffering major depression struggle to concentrate enough to finish a chapter of a book, or even a paragraph, and then will remember little to nothing of it. Id. At the time that plaintiff wrote a complaint to Risk Management about his medications being discontinued, plaintiff testified that he had ten to fifteen books in his cell, and that he reads every day, anywhere from an hour to three hours. Buckley Decl. Exh. B at 78:17-21. Dr. Farago similarly noted how plaintiff's level of physical fitness would require motivation and follow-through, which would support a diagnosis against major depression. Id.

Further, the record does not demonstrate that plaintiff's medical condition significantly affects daily activities, as seen by plaintiff's RCTP note for April 1, 2011, which states, "[i]nmate/patient in good spirits smiling and laughing appropriately," and additionally notes, "[n]o complaints or thoughts of depression." Farago Decl. ¶ 28. Additionally, plaintiff's RCTP note for April 4, 2011 stated that he did not exhibit any signs of depression or anxiety. Id. ¶ 29. Although plaintiff's RMHU progress note for May 16, 2011 states that his mood was "slightly depressed due to lack of programming," this lack of programming resulted from plaintiff's refusal to wear the required exposer suit in compliance with DOCCS orders. Id. ¶ 33. Similarly, on September 6, 2011, while plaintiff's RMHU progress note reported a slight increase in depressive feelings, it is also

noted that plaintiff was not attending any groups or programs because of his failure to wear the required exposer suit. Id. ¶ 35.

Although Dr. Farago contends that plaintiff did not suffer from major depressive disorder, and therefore cannot meet the serious medical need requirement for his claim, (Dkt. No. 87-3 at 5-6), plaintiff's past suicide attempts necessitate a different conclusion. Although plaintiff was never diagnosed with depression by Dr. Farago or Dr. Siddiqi, his past history of suicide attempts, and being put on suicide watch constitutes a serious mental health need, because "[a] propensity to attempt suicide or harm oneself is undoubtedly a serious medical condition . . . ." Barnes v. Ross, 926 F. Supp. 2d 499, 506 (S.D.N.Y 2013).

As demonstrated by the record, plaintiff has a history of past suicide attempts. In 1996, plaintiff had "ripped his shirt up or something and tried to hang [him]self on something that was hanging off the ceiling," and "lost consciousness" for a few minutes once taken down. Buckley Decl. Exh. B at 33:2-18. Following this suicide attempt, plaintiff was taken to Kings County Psychiatric, and was then placed in a "mental health area of Rikers Island C95." Id. at 33:23-25; 34:2-4. In 2005, plaintiff again attempted suicide, when he "hung [him]self from the gate in the middle of the night." Id. at 35:2-9. In late 2012 or early 2013, plaintiff attempted suicide again by attempting to hang himself. Id. at 36:17-25; 37:2-22. In December of 2013, plaintiff was placed on suicide watch again. Id. at 44:16-20. In March of 2015, plaintiff was placed in an "[o]bservation area in Five Points for [a] crisis situation." Id. at 45:13–23.

Accepting the complaint as true, and drawing all inferences in plaintiff's favor, plaintiff has presented a triable issue of fact that his mental health needs were objectively,

sufficiently serious. See Hamilton, No. 06-CV-805 (GTS/DRH), 2009 WL 3199531, at *14 (N.D.N.Y. Jan. 13, 2009) (finding that the plaintiff's history of suicidal thoughts raise a genuine issue of material fact as to the plaintiff's serious medical need). However, even while taking plaintiff's mental health needs as sufficiently serious, plaintiff has failed to show a genuine issue of material fact that Dr. Farago acted with deliberate indifference, as explained infra.

### 2. Deliberate Indifference

Plaintiff alleges that Dr. Farago has denied him therapy and only "pretended" to treat plaintiff's depression while making "comical faces" as plaintiff "begged for [medication]." Dkt. No. 50 ¶¶ 48, 52. However, the record demonstrates that plaintiff would refuse to speak with Dr. Farago and would wave him on when Dr. Farago stopped at plaintiff's cell. Farago Decl. ¶¶ 36, 44. On December 1, 2011, plaintiff refused to speak to Dr. Farago and informed Dr. Farago that "[he] intended to refuse all future call outs with [Farago] because he believed it would help his lawsuit." Id. ¶ 38. This non-compliance undermines plaintiff's conclusory claim that Dr. Farago acted deliberately indifferent toward plaintiff's medical needs. See Wright v. Genovese, 694 F. Supp. 2d 137, 157 (N.D.N.Y 2010) (citing Jones v. Smith, 784 F.2d 149, 151–52 (2d Cir. 1986)) (finding that plaintiff's history of declining treatment by prison doctors undermined his claim that the doctors were deliberately indifferent in failing to treat his back issues). Similarly, while plaintiff claims that Dr. Farago stopped his depression medication, the record demonstrates that plaintiff refused his medication, without giving a reason, on several

occasions, and has admitted that "[he] may skip [his doses] once or twice." Farago Decl. ¶¶ 26, 32; Buckley Decl. Exh. B at 64:12-18. Additionally, from March 29, 2011 through April 4, 2011, the RCTP Nursing Progress Notes in plaintiff's clinical record noted that plaintiff was non-compliant with his psychotropic medication on six occasions during the day shift. Farago Decl. ¶ 27. Dr. Farago stated that it is not uncommon to discontinue medication when the patient is non-compliant. Id. at ¶ 49.

Dr. Farago noted how the first line of treatment for plaintiff's primary diagnosis, ASPD with borderline and narcissistic traits, is cognitive behavioral therapy ("CBT"), not medication. Farago Decl. ¶ 46. Further, assuming that plaintiff's diagnosis of dysthymia is true, CBT is also the treatment of choice, as opposed to medication. Id. While plaintiff was continually offered CBT treatment, which was explained to him numerous times, he chose to refuse CBT and insisted on medication—which was not clinically indicated, in Dr. Farago's opinion. Id. ¶ 47. Although plaintiff believed that the offered treatment was insufficient, "mere disagreement over the proper treatment does not create a constitutional claim." Chance, 143 F.3d at 703. Further, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a Section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Thus, "so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703; see Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). To the extent that plaintiff disagrees with Dr. Farago's medical decisions and states that he suffers from depression, without exhibiting any signs or symptoms of depression or psychological

distress of any kind, such allegations cannot negate plaintiff's extensive medical record which shows that plaintiff was not suffering from depression prior to Dr. Farago's treatment of him, and that plaintiff's diagnoses remained unchanged, even after he was examined by a different psychiatrist. Farago Decl. ¶¶ 17, 45; see Wright, 694 F. Supp. 2d at 156–57 ("Plaintiff's . . . conclusory allegations of deliberate indifference do not negate the extensive evidence that [the doctor] and others reasonably and diligently addressed plaintiff's medical needs over an extended period of time.").

Here, although plaintiff's serious medical condition is sufficient to raise a genuine issue of material fact as to the first prong of his Eighth Amendment claim, he has failed to raise a triable issue of fact establishing that Dr. Farago acted with the requisite deliberate indifference in treating him, and thus, the second prong is not established.

Accordingly, it is recommended that defendant's motion on this ground be granted, and that plaintiff's Eighth Amendment deliberate indifference claim against Dr. Farago be dismissed.

### C. Qualified Immunity

Qualified immunity shields public officials from being liable for civil damages when performing discretionary functions undertaken in the course of their duties. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, "a court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was 'clearly established'

at the time of the defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 224 (2009) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

To establish qualified immunity as a defense, the defendant must show that it was "objectively reasonable" for him to believe that he "had not acted with the requisite deliberate indifference" in violation of the Eighth Amendment. McKenna v. Wright, 386 F.3d 432, 437 (2004). Here, defendant has made that showing. See section II.B.2 supra.

Accordingly, it is recommended that defendant Dr. Farago's motion for summary judgment on the alternative ground of qualified immunity be granted.

### III. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendant Dr. Lawrence Farago's motion for summary judgment (Dkt. No. 87) be **GRANTED** in all respects as to all claims; and it is further

**RECOMMENDED** that plaintiff Vincent Barrow's second amended complaint (Dkt. No. 50) be **DISMISSED** in its entirety; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. 636 (b) (1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636 (b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated: August 9, 2016
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge